# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JASON SMITH,

                                    Plaintiff,

        vs.                                                    9:15-CV-496
                                                               (BKS/ATB)

CORRECTIONAL OFFICER S.
ASHLEY, et al.,

                                    Defendants.

JASON SMITH, Plaintiff pro se
ORIANA CARRAVETTA, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff claims that the remaining[1] defendants have violated his rights under the First and Fourteenth Amendments. (Complaint ("Compl.") (Dkt. No. 1).

---

[1] By Order dated July 27, 2015, Judge Sannes dismissed all defendants except Corrections Officer M. Hamilton, Educational Director A. Rufa, Corrections Counselor C. Hillenbrand, and Director of Special Housing Albert Prack. One "John Doe" defendant also remains, but he has not been served, and thus, defense counsel has not appeared on his behalf, although plaintiff alleges that this individual has now been identified. On August 10, 2015, plaintiff filed a "notice" that he identified "John Doe" as an individual named "Caldwell." (Dkt. No. 7). Plaintiff claims that he served defendant Caldwell by certified mail and also "informed" the Clerk of the Court. (*Id.*) There is no certificate of service by plaintiff and no acknowledgment of service by defendant Caldwell. Thus, it is unclear whether the new defendant has been properly served. Because plaintiff is proceeding IFP, he is entitled to service by the Marshal. If plaintiff has identified the John Doe, he may submit a properly completed 285 Form to the Clerk's Office, who will issue a summons and forward the summons and a copy of the complaint to the Marshal for service.

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 as to the First Amendment retaliation claim and their motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) as to the Fourteenth Amendment procedural due process claim. (Dkt. No. 12). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 23, 24). For the following reasons, this court recommends granting defendant Hamilton's motion for summary judgment based on the failure to exhaust administrative remedies with respect to plaintiff's retaliation claim, and recommends dismissing the complaint in its entirety as against defendant Hamilton. However, the court recommends denying the motion to dismiss plaintiff's due process claims as to defendants Rufa, Hillenbrand, Prack, and John Doe.

## DISCUSSION

I. <u>Facts</u>

Plaintiff's remaining claims involve two distinct incidents that are somewhat related. First, plaintiff alleges that on August 5, 2013, as the result of a drug test,[2] he was given misbehavior report, charging him with drug use ("MBR-1"). (Compl. ¶¶ 10-12). Although plaintiff wrote a letter to former defendant Rabsatt, asking to be retested,[3] defendant John Doe[4] Deputy Superintendent for Security ("DSS") refused his

---

[2] The drug test was administered on August 2, 2013. (Compl. ¶ 10).

[3] Plaintiff maintained that he did not use drugs, and therefore, asked to be retested. (Compl. ¶ 13).

[4] Plaintiff named DSS John Doe as a defendant because the signature after his hand-written note on plaintiff's letter is illegible. As stated above, it appears that plaintiff has now identified this

request by writing directly on plaintiff's letter.[5] (Compl. ¶¶ 13, 15 & Ex. A). Plaintiff alleges that at noon on August 6, 2013, he met with defendant Hillenbrand, who was assigned[6] as plaintiff's assistant for the disciplinary hearing. (Compl. ¶ 14). Defendant Hillenbrand asked plaintiff what information he needed to prepare for his defense, and plaintiff requested documents including former defendant Ashley's "certification," "the refrigerator log book," the "confidential information," and the reason that plaintiff was being tested for drugs. (*Id.*) Plaintiff alleges that at 10:30 a.m. on August 7, 2013, plaintiff met with defendant Hillenbrand again, but discovered that defendant Hillenbrand had not obtained any of the information that plaintiff requested. (Compl. ¶ 16). In addition, shortly after meeting with defendant Hillenbrand on August 7, 2013, plaintiff was called to begin the disciplinary hearing with defendant Rufa as the hearing officer. (Compl. ¶ 17). The MBR-1 hearing was later adjourned for a week, and plaintiff was brought to the Special Housing Unit ("SHU"), where he was housed pening the conclusion of his hearing on August 14, 2013. (Compl. ¶ 14 & Ex. C – indicating that the hearing commenced on August 7, 2013, but ended on August 14, 2013).

---

individual as DSS Caldwell.

[5] After various paragraphs in his complaint, plaintiff cites to exhibits and page numbers. *See e.g.* Compl. ¶¶ 13, 16, 17, 18). Although plaintiff has attached "Exhibits A-I" to his complaint, none of these exhibits correspond to the citations in the body of the complaint. Plaintiff must be citing to exhibits that he filed with a different challenge to his disciplinary hearing. The court will cite to the exhibits that are attached to the complaint because these exhibits are clearly marked.

[6] Plaintiff states that he did not "choose" defendant Hillenbrand as his assistant. (Compl. ¶ 14). Thus, the court assumes that defendant Hillenbrand was assigned to assist the plaintiff. (*See* Compl. Ex. C) (Riverview "Assistant Form" indicating that C. Hillenbrand was "selected" as plaintiff's assistant).

Plaintiff alleges that on August 11, 2013, he wrote another letter to former defendant Rabsatt and sent copies of the letter to his fiancé, the Attorney General, and the Commissioner of DOCCS, complaining "about the discrepancies in the paperwork he was provided with MBR-1, in hopes that . . . Calvin O. Rabsatt would oversee the actions of defendant A. Rufa . . . , and that he would ensure plaintiff a fair hearing free from prejudgement and biasness [sic]." (Compl. ¶ 18 & Ex. D). On August 12, 2013, plaintiff received a response to his August 11 letter that was again hand-written on the letter itself by DSS "John Doe." In this hand-written note, DSS John Doe reminded plaintiff that his disciplinary hearing was not "even completed yet," and that he should address his concerns about the invalidity of the drug test with the hearing officer. (Compl. Ex. D).

Plaintiff alleges that on August 13, 2013, he was in his cell and was approached by an "unknown Lieutenant" about "a letter" that plaintiff wrote to the Inspector General. (Compl. ¶ 20). Plaintiff states that, as he began to "explain himself," the unknown Lieutenant became very upset and walked away. (*Id.*) Plaintiff states that on August 14, 2013, he was escorted to the continuation of his MBR-1 disciplinary hearing by defendant Hamilton. (Compl. ¶ 21). When they arrived at the Tier III hearing room, plaintiff "saw the unknown Lieutenant" with whom plaintiff had tried to speak the day before. (*Id.*) The "unknown Lieutenant" signaled to defendant Hamilton and spoke to him at the "CO's station." (*Id.*) Plaintiff alleges that during the hearing, defendant Hamilton entered the hearing room and told plaintiff that he was going to be charged with "destruction of state property," a charge that appears to be unrelated to

MBR-1. (Compl. ¶ 22).

After defendant Hamilton's interruption, defendant Rufa continued the MBR-1 hearing and called former defendant Ashley as a witness, who testified by telephone. (Compl. ¶ 23). Plaintiff claims that defendant Rufa "intentionally" refused to review facts, answer questions, obtain relevant documents, or allow plaintiff to read evidence into the hearing record so that plaintiff could defend himself against the charges. (*Id.*) Former defendant Ashley allegedly "redirected" some of plaintiff's questions, refused to answer other questions, and allowed defendant Rufa to "lead him in answering questions." (*Id.*) Plaintiff also alleges that defendant Rufa called plaintiff derogatory names off-the-record. (*Id.*) Defendant Rufa ultimately found plaintiff guilty of the drug use charge in MBR-1 and sentenced him to ninety (90) days in SHU, ninety (90) days loss of good time, and ninety (90) days loss of recreation, packages, commissary, and telephone privileges. (Compl. ¶ 24 & Ex. C). Plaintiff appealed MBR-1. (Compl. ¶ 27).

On August 15, 2013, plaintiff received a misbehavior report written by defendant Hamilton, charging plaintiff with destruction of state property ("MBR-2"). (Compl. ¶ 25). MBR-2 states that on August 14, 2013, when defendant Hamilton came to escort plaintiff to his disciplinary hearing for MBR-1, defendant Hamilton noticed that plaintiff had defaced his door frame by scratching words into it, requiring it to be repainted. (Compl. ¶ 25 & Ex. E). Plaintiff claims that another inmate told him that the "unknown Lieutenant" told defendant Hamilton to "write plaintiff up 'for anything.'" (*Id.*) Prior to the hearing for MBR-2, plaintiff states that he met with an "unknown assistant," who looked at the alleged damage to the door frame and told plaintiff that he

would get the inmate who occupied the cell before plaintiff moved into the cell to testify as a witness at the hearing. (Compl. ¶ 26).

Plaintiff's disciplinary hearing for MBR-2 was apparently held at Governeur Correctional Facility ("Governeur"). (Compl. ¶ 28). Plaintiff states that he appeared before an unknown hearing officer, and that plaintiff's witness testified that the damage to the cell door was there when he was placed in the cell and when he left the cell. (*Id.*) Thus, plaintiff could not have been responsible for the damage. Plaintiff alleges that he was found guilty notwithstanding his witness's testimony. (*Id.*) Plaintiff states that he appealed this guilty finding, and that the Superintendent of Governeur reversed the disciplinary determination the next day on August 27, 2013. (Compl. ¶ 30).

Plaintiff's appeal of MBR-1 was denied by defendant Prack, and plaintiff's request for reconsideration of that decision was denied on March 31, 2014. (Compl. ¶¶ 31, 33 & Ex. H). Plaintiff filed an Article 78[7] proceeding in New York State court, challenging defendant Rufa's disciplinary determination and its affirmance by defendant Prack. (Compl. ¶ 32). Plaintiff's Article 78 proceeding was transferred to the Appellate Division, Third Department. (Compl. ¶ 37). After briefing his case in the Appellate Division and serving the Attorney General's Office with the brief on February 20, 2015, plaintiff states that on April 16, 2015, he received an "Administrative Reversal" of the August 14, 2013 disciplinary hearing from D.

---

[7] N.Y. Civ. Prac. L. & R. § 7801 et seq. An Article 78 proceeding is a special proceeding by which the petitioner may obtain relief in the nature of certiorari, mandamus, prohibition. Article 78 proceedings are used to challenge actions or inactions by agencies and officers of state and local governments. Article 78 is the means by which inmates my bring challenges to their disciplinary proceedings after exhaustion of the DOCCS disciplinary appeals.

Venettozzi, Acting Director, Special Housing/Inmate Disciplinary Program. (Compl. ¶ 40).

Plaintiff alleges due process violations against (1) defendant Hillenbrand for failing to provide plaintiff with the requested documentary evidence, "paralyzing" his defense, (2) defendant Rufa for starting the disciplinary hearing the same day that plaintiff met with defendant Hillenbrand, relying on false information, prejudging plaintiff, intentionally ignoring exculpatory evidence, refusing to allow plaintiff to present evidence and to speak in his own defense, and using derogatory language, and (3) defendant Prack for failing to overturn the defective disciplinary proceeding. (Compl. ¶¶ 41, 42, 47-48). Plaintiff alleges that the due process violations caused him to lose 90 days good time, his opportunity for earned eligibility credits, his "Merit Board," and his fiancé. (Compl. ¶ 48).

In its initial order, the court construed plaintiff's complaint as also raising a First Amendment retaliation claim against defendant Hamilton because plaintiff alleged that defendant Hamilton was told to issue MBR-2 for "any reason," allegedly due to plaintiff's discussion with an unknown Lieutenant about plaintiff's letter to the Inspector General regarding MBR-1. (Dkt. No. 5 at 7).

## II.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with

inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## III. <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted);

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

10

## IV.  Exhaustion of Administrative Remedies

### A.  Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite

11

to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* at § 701.8.

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[8] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion

---

[8] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

12

requirement. *See Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry in recent cases. *See, e.g.*, *Heyliger v. Gebler*, 624 F. App'x 780, 782-83 & n.3 (2d Cir. 2015) (declining to reach the issue, but noting that even under "pre-*Woodford* caselaw" the plaintiff had failed to establish either that defendants were estopped from asserting the defense or that special circumstances excused exhaustion); *Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir. 2011); *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011). *See also Morgan v. Ward*, No. 1:14-CV-7921, 2016 WL 427913, at *5 & n.4 (S.D.N.Y. Feb. 2, 2016) (noting the possibility that *Woodford* may have "called into question the *Hemphill* exceptions, but that the Second Circuit continues to recognize that compliance with the exhaustion requirement may be "excused" in certain circumstances) (citing *Heyliger, supra*).[9]

---

[9] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand,

## B.    Application

Defendants state that their motion for summary judgment is addressed to the plaintiff's retaliation claim as against defendant Hamilton. Defendants argue that this claim may be dismissed because plaintiff failed to exhaust his administrative remedies with respect to his claim of retaliation. In support of their motion for summary judgment, defendants have filed the affidavit of Jeffrey Hale, the Assistant Director of the Inmate Grievance Program ("IGP"). (Hale Decl.) (Dkt. Nos. 12-3 & 26).[10] Assistant Director Hale states that plaintiff's allegations against defendant Hamilton are proper subjects for a grievance. (Hale Decl. ¶ 9). Assistant Director Hale also states that DOCCS directives mandate that the CORC retain appeal records for the current year and for the four previous calendar years. (Hale Decl. ¶ 7). Defendant Hale states that the CORC database also contains records of all appeals received from the IGP Supervisor and those reviewed under the expedited procedure used for harassment grievances. (*Id.*) The database also contains a great deal of historical data with respect to CORC appeals as far back as 1986. (*Id.*) Assistant Director Hale further states that he examined these records and has determined that plaintiff did not appeal to the CORC any grievance alleging a retaliatory misbehavior report filed by defendant Hamilton. (Hale Decl. ¶¶ 10, 13 & Ex, A). In fact, Exhibit A shows that most of plaintiff's

---

the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

[10] The Hale Declaration refers to Exhibit A    the printout of the CORC database reflecting the results of IGP Assistant Director Hale's search for plaintiff's appeals. (Hale Decl. ¶ 10). Exhibit A was inadvertently omitted by defense counsel and has been filed as Dkt. No. 26).

appeals to the CORC are from 2015. (Hale Decl. Ex. A).

Defendants have also submitted the declaration of Kris Monnet, the IGP Supervisor at Riverview. (Monnet Decl.) (Dkt. No. 12-4). After reviewing the grievance procedures employed by DOCCS and available at Riverview, IGP Supervisor Monnet states that she searched the IGP files to determine whether plaintiff filed any grievances at Riverview regarding his claims of retaliation against defendant Hamilton. (Monnet Decl. ¶¶ 4-10). IGP Supervisor Monnet states that between July 2013 and November 2013, while plaintiff was incarcerated at Riverview, he filed only one grievance, and that grievance did not involve claims of retaliation by any of the officers at Riverview. (Monnet Decl. ¶¶ 11-12).

In his response to the defendants' motion, plaintiff does not appear to challenge the assertion that he did not file or appeal a grievance regarding defendant Hamilton's retaliation. (Pl.'s Mem. of Law at 2-3). Instead, plaintiff argues that the exhaustion requirement was satisfied because he appealed the disciplinary determination, arguing that he was "written up out of retaliation and revenge by an officer in Riverview." (Pl.'s Mem. of Law at 2-5). He also notes that he received a favorable determination as a result of that appeal. Plaintiff alleges that the formal exhaustion requirement should be excused, essentially arguing that he has met the "special circumstances" requirement. (*Id.*) Plaintiff attaches a copy of the misbehavior report as well as the appeal form that he filed. (*Id.* at 9-10 (CM/ECF pp. 11-12)).

In support of his argument, plaintiff cites *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001) in which the Second Circuit held that succeeding through "informal

channels" met the exhaustion requirement. (Pl.'s Mem. of Law at 3). However, in *Dabney v. Pegano*, 604 F. App'x 1, 5 (2d Cir. 2015), the court stated that the Second Circuit has "rejected" the argument that inmates may take enough "informal" steps to put prison officials on notice of the inmates' concerns. *Id.* (citing *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007), *overruling Braham v. Clancy*, 425 F.3d 177 (2d Cir. 2005) to the extent that *Braham* could be read to allow for less than 'proper exhaustion' of claims). These "informal channels" include raising the relevant facts in appeals of the inmate's related disciplinary hearing. *Dabney, supra*.

Plaintiff also cites cases which specifically discuss inmates who claimed retaliatory discipline exhausting their administrative remedies by appealing the disciplinary decision to the highest level as opposed to using "other" informal channels. (Pl.'s Mem. of Law at 3)) (citing *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003); *Samuels v. Selsky*, 2002 WL 31040370, at *8 (S.D.N.Y. Sept. 12, 2002)). However, all the cases plaintiff cites pre-date *Woodford*, which was decided in 2006 and pre-date the more recent Second Circuit cases that have clarified this issue.

In *Dabney*, the Second Circuit held that appealing from a disciplinary hearing only justifies non-compliance with the grievance procedure when a prisoner "reasonably interprets" DOCCS regulations to mean that his "'only administrative recourse was to appeal his disciplinary conviction.'" *Dabney v. Pegano*, 604 F. App'x 1, 5 (2d Cir. 2015). *See also Hopkins v. Allard*, No. 9:08-CV-01 (DNH/DEP), 2010 U.S. Dist. LEXIS 114368, at *27 (N.D.N.Y. Aug. 23, 2010) (Rep. Rec.) (citing cases), *adopted by* 2010 U.S. Dist. LEXIS 100675, 2010 WL 3825650 (N.D.N.Y. Sept. 24,

16

2010). In *Hopkins* the court even cited pre-*Woodford* cases, holding that appealing from a disciplinary hearing does not satisfy the exhaustion requirement, even if the disciplinary hearing is based on the same set of fact underlying the grievance. 2010 U.S. Dist. LEXIS 114368, at *27 (citing, inter alia, *LaBounty v. Johnson*, 253 F. Supp. 2d 496, 501-502 (W.D.N.Y. 2003) (citing cases)).

In *Hopkins*, the court cited another exception to the general rule that appealing disciplinary hearings does not suffice to exhaust administrative remedies. *Id.* at *27 n.16. The appeal of a disciplinary proceeding will suffice to exhaust administrative remedies if the issue that the inmate is raising in his federal action is a challenge to the due process afforded by the hearing officer at the disciplinary proceeding, rather than the alleged misconduct of the officer who filed the misbehavior report which resulted in the disciplinary hearing. *Id.* (citing *LaBounty*, 253 F. Supp. 2d at 502 n.5).

Plaintiff in this case is not challenging the due process procedures at the disciplinary hearing that was held with respect to MBR-2. In fact, the property charge was ultimately dismissed. Even though plaintiff had been transferred by the time the hearing was held, he could have filed a grievance claiming staff misconduct under 7 NYCRR § 701.8 with respect to defendant Hamilton's alleged retaliatory misbehavior report, accusing plaintiff of defacing he cell door frame.

In this case, plaintiff is familiar with and has used the grievance procedure. He argues only that the appeal of his disciplinary proceeding suffices to exhaust his administrative remedies as to the retaliation claim. Based on the cases cited above, it is now clear the appeal of MBR-2 is insufficient to exhaust claims of defendant

Hamilton's misconduct, even if that misconduct formed the basis of the disciplinary proceeding.  Thus, plaintiff's First Amendment retaliation claim may be dismissed for failure to exhaust administrative remedies.

## V.     **Due Process**

### A.     **Legal Standards**

To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process.  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in keeplock or a segregated housing unit automatically gives rise to due process protection.  *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000).  Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed.  *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004).

18

A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). "Where the plaintiff was confined for an intermediate duration–between 101 and 305 days– . . . a district court must "make a fact-intensive inquiry," . . . examining "the actual circumstances of SHU confinement" in the case before it . . . ." *Palmer v. Richards*, 364 F.3d at 64-65 (citations omitted). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest. However, "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (*citing, inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

## B. Application

In this case, plaintiff challenges the due process procedures relating to the disciplinary hearing for MBR-1 (the drug charge). Defendants argue that plaintiff's due process claim should be dismissed because plaintiff had no protected liberty interest. Although plaintiff's sentence included a loss of good time, which generally does create a liberty interest, it appears that plaintiff's charges were reversed prior to his actual loss of good time. The fact that plaintiff's initial punishment included a loss of good time is insufficient to establish a liberty interest if the guilty finding was ultimately reversed and the good time was never lost. *See e.g., Jones v. Lindblad*, No. 05-CV-814S, 2009 WL 804155, at *9 (W.D.N.Y. Mar. 25, 2009); *Husbands v. McClellan*, 957 F. Supp. 403, 409 (W.D.N.Y. 1997).

Although defendant Rufa's disciplinary determination was initially affirmed, the hearing was "administratively reversed" on April 15, 2015, after plaintiff brought an Article 78 proceeding in New York State court. (*See* Pl.'s Ex. I). It is unclear whether the Article 78 proceeding was the precipitating factor in the "administrative reversal." In any event, is clear that plaintiff served all of his 90-day SHU sentence.[11] In addition, as stated above, SHU periods of less than 101 days may constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v.*

---

[11] It is clear because the administrative reversal was almost two years after the disciplinary hearing. (Pl.'s Ex. I).

*Richards*, 364 F.3d at 65 (citations omitted).

The court assumes that plaintiff's good time was reinstated, but plaintiff also alleges that he lost his "Merit Board, Conditional Release, [and] fiancé." (Compl. ¶¶ 44, 48). It is unclear what plaintiff means when he says that he "lost" his "Merit Board" and his "Conditional Release."[12] It is unclear what the effect of the reversal of his disciplinary hearing would have had on these, and whether plaintiff's time allowances – other than good time – were restored after the reversal. These may have affected the length of his confinement and could have given rise to a liberty interest, but it is impossible to tell in this complaint in a motion to dismiss.

In a case with almost identical SHU conditions alleged by the same plaintiff, Magistrate Judge Daniel Stewart recommended denying a motion to dismiss where plaintiff spent only 74 or 75 days, and up to 90 days in SHU.[13] *Smith v. Costello*, No. 9:15-CV-401, 2016 WL 830045, at *1-2 (N.D.N.Y. Mar. 3, 2016), *adopting* Order & Report-Recommendation dated Feb. 3, 2016 at 8-9) (Dkt. Nos. 25, 27 in 15-CV-401). Magistrate Judge Stewart found that a ninety (90) day confinement was "relatively

---

[12] Merit time may be awarded to inmates who have not been convicted of certain specified felonies and have completed certain programs. N.Y. Correct. Law § 803(1)(d); 7 NYCRR § 280.1. Merit time may reduce an inmate's sentence. *Brown v. Fischer*, No. 10 Civ. 3830, 2011 WL 4056302, at *7 (S.D.N.Y. Aug. 17, 2011) (citing N.Y. Correct. Law § 803(1)(d). Merit time allowance, which is different than "good time," may be withheld for serious disciplinary infractions, including illegal substance use. *Id.* (citations omitted). Inmates who test positive for substance abuse are not eligible for merit time. *Id.* Good time allowances are governed by 7 NYCRR § 260 et seq. A disciplinary disposition involving loss of "good time" is deemed "tentative" until such time as it actually affects consideration for parole or conditional or other release. 7 NYCRR § 260.4.

[13] Magistrate Judge Stewart actually found that the time plaintiff spent in SHU was unclear from the complaint, but it could have been up to 90 days. (Dkt. No. 25 in 15-CV-401 at 8).

close to that intermediate duration noted by the Second Circuit." (Dkt. No. 25 in 15-CV-401 at 9).

Magistrate Judge Stewart also noted that in view of the length of the SHU confinement, and drawing all reasonable inferences in plaintiff's favor in a motion to dismiss, the court should "look at the actual conditions Plaintiff endured while in SHU." (*Id.*)  As in this case, the body of the complaint failed to include allegations with regard to the conditions in SHU, but the "Wherefore" clause contains such a description. (*Id.*)  Although the SHU conditions described by plaintiff in 15-CV-401 were slightly different than those he describes in this case, the cell size was the same, and plaintiff also alleged the denial of his personal property, the ability to work, the ability to watch television, engage in sports and participate in other congregate recreational activities, and the ability to associate with other prisoners and attend Jumah services. (*Compare* Dkt. No. 25 in 15-CV-401 at 9 *with* Dkt. No. 1 in 15-CV-496).

In this case, plaintiff also alleges that he had to share his cell with another inmate, share 10 minute showers, with no shower curtain, and share an open toilet. (Dkt. No. 1 at ¶ VI).  In 15-CV-401, plaintiff also alleged "physical abuse due to discrimination, evil intentions, and willful and malicious conduct." (Dkt. No. 25 in 15-CV-401 at 9).  In this case, plaintiff alleges that he suffered "extreme emotional distress due to the evil intentions, willful and malicious conduct, retaliation, [and] discrimination."[14] (Dkt. No. 1 in 15-CV-496 at ¶ VI).

---

[14] The court does note that plaintiff was incarcerated in a different facility in 15-CV-401. However, that does not affect this court's decision that the liberty interest issue may not be determined on the pleadings alone.

In 15-CV-401, Judge Sannes adopted Magistrate Judge Stewart's recommendation, and denied defendant's motion to dismiss on almost identical facts. Thus, this court finds, consistent with the decision in 15-CV-401, and with plaintiff's statement that he "lost" his "Merit Board" and his "Conditional Release," that at this stage of the litigation, the court cannot determine whether a liberty interest was created based on the complaint alone. (Dkt. No. 25 in 15-CV-401 at 10). The more appropriate vehicle for such a determination is a motion for summary judgment, where the court may rely on matters outside the pleadings, including affidavits or declarations describing the conditions in SHU. *Id.* (citing *Withrow v. Donnelly*, 333 F. Supp. 2d 108, 110-11 (W.D.N.Y. 2004) (prisoner confined for either one hundred twenty (120) or seventy-seven (77) days) (citing *Palmer v. Richards*, 364 F.3d at 66); *accord Davis v. Barrett*, 576 F.3d 129 (2d Cir. 2004)).

Based on Judge Sannes's adoption of Magistrate Judge Stewart's Recommendation and the similarity of the facts and allegations in both cases regarding the conditions of SHU, this court will recommend denying the defendants' motion to dismiss based on the lack of a liberty interest. However, in doing so, the court expresses no opinion as to whether plaintiff's claim will survive a properly supported motion for summary judgment.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 12) be **GRANTED IN PART**, and the complaint dismissed in its entirety for failure to exhaust administrative remedies as against defendant **HAMILTON**, and in its entirety insofar

23

as the complaint alleges retaliation, and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 12) be

**DENIED** insofar as it alleges a due process claim as against defendants **RUFA,**

**PRACK, AND HILLENBRAND**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 1, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge